WALTER D. WATSON & COMPANY, INC., Respondent, *v.* GRAVES ELEVATOR COMPANY, INC., Appellant.

Third Department, July 6, 1922.

**Contracts** — action for breach — failure to install elevator within time specified in contract — contract provided that defendant should have uninterrupted use of shaft — failure of plaintiff to comply with condition waived time of performance — trial — error for court to direct verdict for plaintiff as there was evidence of its failure to perform contract — defendant entitled to most favorable inference from evidence on directed verdict — damages — amount of rental plaintiff would have received for two buildings including one in question, no evidence of rental of building in question.

In an action to recover damages for the breach of a contract to install an elevator in a building of the plaintiff, where the alleged breach consisted of the failure of the defendant to complete the installation within the time specified in the contract, the time of performance will be deemed to have been waived by the

plaintiff, where it appears that the contract provided that the defendant should have the uninterrupted use of the elevator shaft or hatchway and the evidence establishes that during the period of construction the contractor engaged in the construction of the building made use of the elevator shaft in prosecuting his operations.

As there was evidence tending to establish the fact that the plaintiff failed to perform its contract, it was error for the court to direct a verdict in its favor.

On an appeal from a judgment entered upon a directed verdict in favor of the plaintiff it is the right of the defendant to have the evidence considered most favorably to itself.

A lease which covered not only the building in question, but another building, was no evidence as to the rental value of the building in question, and could not properly be made a basis for estimating the damages suffered by the plaintiff by reason of the delay in the completion of the contract.

APPEAL by the defendant, Graves Elevator Company, Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Albany on the 20th day of January, 1921, upon the verdict of a jury rendered by direction of the court.

*John M. Stull,* for the appellant.

*Kellas & Kellas* [*LeRoy M. Kellas* of counsel], for the respondent.

COCHRANE, P. J.:

Plaintiff was erecting at No. 11 Central avenue in the city of Albany a five-story building to be used as an automobile salesroom and garage. It contracted with the defendant for the sum of $4,000 to install in the building an automobile freight elevator. The plaintiff was to prepare a suitable shaft or hatchway for the elevator, prepare a place for the machinery, make a pit in the bottom of the hatch, and remove all obstructions which might interfere with the installation of the elevator. The defendant agreed to complete the installation three weeks after the hatchway was in readiness on condition that it " have the uninterrupted use of same." April 17, 1920, plaintiff notified the defendant that the hatchway was ready. Defendant did not complete the installation of the elevator until July twelfth following. Plaintiff brings this action for a breach of contract by the defendant alleging as damages that it was deprived of the rental value of the building because of the defendant's delay. The defense is that the defendant did not have the uninterrupted use of the hatchway and that the defendant in the prosecution of the work met with obstructions and interference by reason of other building operations going on at the same time.

It appears that the contractor in the construction of the building was continuing the building operations after April seventeenth. The contractor had a hod hoist in the elevator shaft and there is

evidence that it was using the same until May sixth.   After the hod hoist was removed on the latter date a concrete bottom was placed in the shaft which was completed about May twelfth. After the hod hoist was removed the shaft was used by the contractor for hoisting with a " block and fall " sand, cement and lumber, and for lowering material from the upper floors.   The presence of the hod hoist in the hatchway perhaps is not the subject of a grievance on the part of the defendant because it rented the same for use in its operations.   But that does not overcome the fact that it was at the same time being used by the contractor in prosecuting his operations and there is evidence that the employees of the contractor continued to use the hatchway in connection with their own work.   There is evidence that timbers were across the hatchway on each floor which interfered with the work of the defendant.   Later the defendant requested that those timbers remain to facilitate its own operations, but that does not obviate the fact that their previous existence in the places mentioned may have interfered with the work of the defendant as the latter claims.   It is undisputed that on May fourth a plasterer began the performance of a contract for which he was paid over $2,000 and that the material used by him was hoisted up to the different floors of the building through this hatchway by means of " a pulley, block and fall."   There is evidence that in the latter part of April the employees of the contractor while concreting the pit for the elevator shaft five times removed the defendant's lines and false work causing a delay on each occasion of three or four hours.   Finally there is evidence that there was no time during the installation of the elevator up to the middle of June that the hatchway was free and other workmen were not working around the same.   From the foregoing survey of the evidence it is clear that there was a question for the consideration of a jury as to whether or not the plaintiff performed on its part its contract to give the defendant the uninterrupted use of the hatchway for the three weeks within which the defendant had agreed to install the elevator.

There is considerable evidence it is true that the defendant did not prosecute the work with the diligence it might have exercised.   It did not have its material promptly at the building; it did not always have as many men there as it might have provided.   Perhaps it might have completed its contract much earlier than July twelfth.   It may have been more interested in the performance of another contract.   All that avails the plaintiff nothing if it failed on its part to observe its contract by furnishing the defendant the uninterrupted use of the hatchway for the three

weeks following April seventeenth. Such failure operated as a waiver in respect to time. In *Dannat* v. *Fuller* (120 N. Y. 554) the rule is stated as follows: " It is a well-settled rule that where one party demands strict performance as to time by another party, he must perform on his part all the conditions which are requisite in order to enable the other party to perform his part, and a failure on the part of the party demanding performance to do the preliminary work required in order to enable the other party to complete his within the time limited, operates as a waiver of the time provision in the contract," and in support of that rule the court in the case mentioned cites many authorities and continues as follows: " It consequently appears to us that the failure of the plaintiffs to perform on their part operated as a waiver of the performance of the contract as to time, and the defendant consequently had the right to perform his part of the contract within a reasonable time after the plaintiffs had completed their part." There being evidence tending to establish the fact that the plaintiff failed to perform its contract it was error for the court to direct a verdict in its favor. We are not now concerned with the weight of evidence. On a directed verdict it is the right of the defendant to have the evidence considered most favorably to itself.

The verdict directed was for $1,332.96. In arriving at this amount the court evidently made a computation based on a lease in evidence which the plaintiff had executed to be operative from the first of June if the building was in suitable condition on that date. The lease recited a rental of $14,000 annually. The court considered that the plaintiff had been deprived of such rent from June first to July twelfth, when the elevator was completed. But the lease covered not only the building in question but another building. It consequently constituted no evidence as to the rental value of the building in question and could not properly be made a basis for damages. No other evidence of damage appears in the case which can sustain a verdict for the amount directed.

It follows that the judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event.

All concur.

Judgment and order reversed and new trial granted, with costs to the appellant to abide the event.